## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ALEXANDER HUN and DANA PAUL, on behalf of themselves and all others similarly situated,** | **CASE NO.:  15-1319** |
| **Plaintiffs,** | |
| **v.** | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| **KASHI COMPANY, a California Corporation,** | |
| **Defendant.** | |

Plaintiffs Alexander Hun and Dana Paul (collectively "Plaintiffs"), by their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action on behalf of two Classes of New York consumers and two Classes of New Jersey consumers who purchased Defendant Kashi Company's ("Kashi") food products containing synthetic and/or artificial ingredients, including but not limited to one or more of the following ingredients: Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and Xanthan Gum (collectively, the "Challenged Ingredients").  Since at least 2007, Kashi has packaged, marketed, distributed and sold Kashi food products as being "All Natural" or "Nothing

Artificial," despite the fact the Kashi food products contain between one (1) and seven (6) of the Challenged Ingredients, as identified and described in Paragraphs 30-42 herein, some of which are artificial, all of which are synthetic chemicals, and all of which are recognized as synthetic chemicals by federal regulations.[1]   Plaintiffs refer to these products as the "Kashi Products" throughout this Complaint.

2.      Since at least 2007, Kashi prominently claimed that the Kashi Products were "All Natural" or contained "Nothing Artificial," cultivating a wholesome and healthful image in an effort to promote the sale of these products, even though the food products were actually not "All Natural" or "Nothing Artificial" as they were labeled.

3.      While certain "All Natural" Kashi Products' labels did disclose that they contained Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Soy Ingredients, Potassium Bicarbonate, Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and/or Xanthan Gum, these Kashi Products' labels did not disclose that these ingredients were synthetic or artificial.   In addition, none of the Kashi Products labeled "All Natural" disclosed on the packaging that the soy ingredients contained within were hexane-processed.[2]   In light of these Kashi Products' labels' "All Natural" representation, a reasonably prudent consumer would certainly not normally expect these food products to include synthetic or artificial ingredients.   Indeed, as a result of such false and

---

[1] As used throughout this Complaint, the "Kashi Products" include the products identified in Paragraphs 64 and 65 of this Complaint and in Exhibits 1 and 2 attached hereto.  Exhibit 4 ¶ 23 is a list Kashi prepared to accurately identify products containing the Challenged Ingredients for purposes of identifying Settlement Class Members in the California Action.  With respect to products already identified in this Complaint, Kashi's list may also identify the same product(s) as this Complaint with a slightly different name.  To the extent this list differs from the products identified in this Complaint, Plaintiffs' definition of the Kashi Products includes all such Kashi Products bearing the mislabeling at issue containing the Challenged Ingredients.  Plaintiffs have amassed sufficient labels to believe that their allegations are supported with respect to those Kashi Products that have been identified in this Complaint; however, discovery will confirm which ingredients were included in each of the Kashi Products.  As discovery reveals additional information, the list of synthetic and/or artificial ingredients in the Kashi Products and/or the list of Kashi Products at issue may change.

[2] Hexane is a known neurotoxic petrochemical solvent that is used by some manufacturers to produce oils, soy protein isolates or texturized soy proteins from soybeans.

misleading labeling, Kashi was able to sell these purportedly "All Natural" products to thousands of unsuspecting consumers in New York and New Jersey while profiting handsomely from these transactions.

4.      Likewise, while certain "Nothing Artificial" Kashi Products' labels did disclose that they contained Pyridoxine Hydrochloride, Alpha-Tocopherol Acetate and/or Soy Ingredients, these Kashi Products' labels did not disclose that these ingredients were artificial.  In addition, none of the Kashi Products labeled "Nothing Artificial" disclosed on the packaging that the Soy Ingredients contained within were processed with Hexane, which is artificial.  In light of these Kashi Products' labels' "Nothing Artificial" representation, a reasonably prudent consumer would certainly not normally expect these food products to include artificial ingredients.  Indeed, as a result of this false and misleading labeling, Kashi was able to sell these purportedly "Nothing Artificial" products to thousands of unsuspecting consumers in New York and New Jersey while profiting handsomely from these transactions.

5.      One federal court already sustained and certified for class treatment similar claims against Kashi under California law.  In 2011, several consumers filed lawsuits in California under California consumer protection laws and the California Uniform Commercial Code regarding the Kashi Products' false and misleading "All Natural" and "Nothing Artificial" labeling (the "California Action").[3]  On July 30, 2013, the California federal court presiding over these consolidated cases certified a class of consumers who purchased Kashi's purportedly "All Natural" products in California containing synthetic and/or artificial ingredients, and a class of consumers who purchased Kashi's "Nothing Artificial" products in California containing

---

[3] These cases were consolidated before the Hon. Judge Huff of the U.S. District Court for the Southern District of California at Case No. 3:11-CV-01967-H (BGS).  Plaintiffs' counsel here also acted as co-lead counsel in the California Action.

artificial ingredients.[4]  Although those plaintiffs sought certification of a nationwide class of all Kashi consumers, the court limited the class to California consumers.[5]  Thus, although Kashi settled the California Action, that settlement released claims and provided monetary relief with respect to California residents exclusively.[6]  As such, Plaintiffs now bring this action on behalf of New York and New Jersey consumers to hold Kashi accountable for its wrongdoing in New York and New Jersey.

6.     Plaintiff Hun is a New York resident who allege Kashi's conduct violates New York General Business Law § 349 and New York General Business Law § 350 and gives rise to claims for Breach of Express Warranty under New York's Uniform Commercial Code and for Unjust Enrichment under New York common law.

7.     Plaintiff Paul is a New Jersey resident who allege Kashi's conduct violates the New Jersey Truth in Consumer Contract, Warranty and Notice Act (N.J.S.A. § 56:12-14 *et seq.*, "TCCWNA"), and gives rise to claims for Breach of Express Warranty under New Jersey's Uniform Commercial Code and for Unjust Enrichment under New Jersey common law.

8.     In addition to monetary damages and restitution, Plaintiffs also seek injunctive and declaratory relief based upon Kashi's conduct asserted in this Complaint.  Pursuant to the settlement in the California Action, Kashi was only required to remove its "All Natural" and "Nothing Artificial" labeling from Kashi Products containing *some* synthetic and artificial ingredients.[7]  Thus, Kashi is free to maintain its unlawful and deceptive "All Natural" and

---

[4] Exhibit 3, *Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification*, Case No. 3:11-CV-01967-H (BGS).

[5] *Id*. at 25.

[6] Exhibit 4, Stipulation of Settlement, *Astiana, et al. v. Kashi Company*, Case No. 11-cv-1967 (S.D.Cal.) at p. 5, ¶ 5 ("'Class' means all California residents who purchased any package of the Products during the Settlement Class Period").

[7] Exhibit 4, Stipulation of Settlement, *Astiana, et al. v. Kashi Company*, Case No. 11-cv-1967 (S.D.Cal.) pp. 15-16 (Kashi only removed "All Natural" labeling from products containing pyridoxine hydrochloride, calcium

"Nothing Artificial" labeling on Kashi Products containing other Challenged Ingredients. Moreover, Kashi's agreement as to those products, subject to the injunctive component of the California Action's settlement expires September 2, 2017.[8]  Thereafter, Kashi will once again be free to use its deceptive and unlawful labeling on all its products.  Indeed, testimony from Kashi's corporate representative in the California Action makes clear that, absent such an agreement or an injunction, Kashi intends to continue to use its false, misleading and unlawful "All Natural" and "Nothing Artificial" misrepresentations on the Kashi Products' labels.[9]

9.     Accordingly, Plaintiffs seek declaratory and injunctive relief to prohibit Kashi from restoring the "All Natural" representation to labels for Kashi Products containing synthetic or artificial ingredients.  Likewise, Plaintiffs seek declaratory and injunctive relief to prohibit Kashi from restoring the "Nothing Artificial" representation to labels for Kashi Products containing artificial ingredients.

**PARTIES**

10.     Plaintiff Alexander Hun resides in Flushing, Borough of Queens, New York.  Mr. Hun is willing to and has paid a premium for foods that are all natural and has refrained from buying their counterparts that were not all natural.  Plaintiff Hun purchased the following Kashi Products as described below from retail stores near his home in Queens including Target, Waldbaums, Stop N' Shop, Keyfood, CVS and Trader Joe's:

---

pantothenate and/or hexane-processed soy ingredients, and only removed "Nothing Artificial" labeling from products containing pyridoxine hydrochloride, alpha-tocopherol acetate and/or hexane-processed soy ingredients).
[8] *Id.* at 16 ("the injunctive terms and requirements of this Paragraph shall expire three years after the Effective Date") and 21 (explaining the Effective Date is the date the court entered the Final Judgment); Final Order and Judgment, Dkt. No. 242, *Astiana, et al. v. Kashi Company*, Case No. 11-cv-1967 (S.D.Cal.) (entered September 2, 2014).
[9] Exhibit 4 - April 4, 2013 Deposition of Kashi Company through Jeffrey Johnson Pursuant to Fed. R. Civ. P. 30(b)(6), *Astiana, et al. v. Kashi Company*, Case No. 11-cv-1967 (S.D.Cal.) ("Kashi Dep.") at 174:10-25 (testifying Defendant had no plans to remove the "All Natural" and "Nothing Artificial" labeling).

a) **TLC Baked Apple Spice Soft-Baked Cereal Bars**, **TLC Blackberry Graham Soft-Baked Cereal Bars**, **GoLean Chocolate Almond Toffee Protein and Fiber Bars**, **TLC Raspberry Chocolate Fruit and Grain Bars**, **TLC Ripe Strawberry Soft-Baked Cereal Bars** and **GoLean Chewy Oatmeal Raisin Cookie Protein and Fiber Bars** – Purchased approximately two 60-count variety packs and two eight-count boxes containing these bar products per month from approximately 2008 until the end of 2014 just prior to learning of the mislabeling at issue shortly before filing this Complaint;

b) **GoLean Crunchy! Chocolate Caramel Protein and Fiber Bars** – Purchased this product at least once within the last three years;

c) **GoLean Cookies N. Cream Protein and Fiber Bars** –  Purchased this product at least once within the last three years;

d) **GoLean Chocolate Almond Toffee Protein and Fiber Bars** – Purchased this product at least once within the last three years;

e) **GoLean Chewy Malted Chocolate Crisp Protein and Fiber Bar** - Purchased this product at least once within the last three years;

f) **7 Whole Grain Nuggets Cereal**, **Berry Blossoms Cereal**, **GoLean Crunch! Honey Almond Flax Cereal**, **Honey Sunshine Cereal**, **GoLean Crunch! Cereal** and **Mountain Medley Granola** – Purchased on average three to four boxes per month of these products from approximately 2008 until the end of 2014 just prior to learning of the mislabeling at issue shortly before filing this Complaint.

g) **Cocoa Beach Granola** – Purchased this product at least once within the last three years.

h) **GoLean Honey & Cinnamon Instant Hot Cereal** – Purchased this product approximately once per month beginning approximately March 2011 until the end of 2014 just prior to learning of the mislabeling at issue shortly before filing this Complaint.

11.   Plaintiff Hun has not purchased any Kashi Products since learning of the mislabeling at issue herein.  Based on the "All Natural" representation on the above Kashi Products' labels, Plaintiff Hun believed that these products he purchased were all natural and relied on this representation in making his purchases.  However, these Kashi Products Plaintiff Hun purchased contained synthetic and artificial ingredients.  While the labels touted these Kashi Products as "All Natural," the labels upon which Plaintiff Hun relied did not disclose that synthetic or artificial ingredients were used in these products.  Plaintiff Hun not only purchased these Kashi Products because the labels said they were "All Natural," but he paid more money for these Kashi Products than he would have had to pay for other products that were not purportedly "All Natural."  Had Plaintiff Hun known the truth that Kashi's food products were not all natural, he would not have purchased these Kashi Products, but would have purchased another brand of products that was truly all natural or, if one was not available, would have purchased other non-natural products that were less expensive than these Kashi Products. Plaintiff Hun did not receive the "All Natural" products he bargained for when he purchased Defendant's "All Natural" Kashi Products, and lost money as a result in the form of paying a premium for these Kashi Products because they were purportedly "all natural" rather than paying the lesser amount for non-natural alternatives.

12.     Plaintiff Hun also purchased Kashi's "Nothing Artificial" products from retail stores near his home in Queens including Target, Waldbaums, Stop N' Shop, Keyfood, CVS and Trader Joe's as follows:

a) **Heart to Heart Honey Toasted Oat Cereal, Heart to Heart Wild Blueberry Clusters Cereal, Heart to Heart Warm Cinnamon Oat Cereal**, and **Heart to Heart Blueberry Flake and Cluster Oat Cereal** – Purchased approximately three to four boxes per month of these products from approximately 1999 until just prior to learning of the mislabeling at issue shortly before filing this Complaint.

13.     Plaintiff has purchased no Kashi Products since learning of the misrepresentations at issue herein.  Based on the "Nothing Artificial" representation on these products' labels, Plaintiff Hun believed Kashi's Heart to Heart products he purchased contained nothing artificial and relied on these representations in making his purchases.  However, Kashi's "Nothing Artificial" Heart to Heart food products Plaintiff Hun purchased contained artificial ingredients. While Kashi's labels touted these Heart to Heart products as containing "Nothing Artificial," the labels upon which Plaintiff Hun relied did not disclose that artificial ingredients were used in the products.  Plaintiff Hun not only purchased Kashi's purportedly "Nothing Artificial" Heart to Heart products because the labels said these products contained "Nothing Artificial," but he paid more money for Kashi's "Nothing Artificial" products he purchased than he would have had to pay for other similar products that contained artificial ingredients.  Had Plaintiff Hun known the truth that Kashi's Heart to Heart products contained artificial ingredients, he would not have purchased Kashi's Heart to Heart products, but would have instead purchased another brand of products that did not contain artificial ingredients or, if one was not available, he would have

8

purchased other products that did not claim to contain nothing artificial and were less expensive than Kashi's Heart to Heart products.  Plaintiff Hun did not receive the "Nothing Artificial" products he bargained for when he purchased Defendant's Kashi Heart to Heart products, and has lost money as a result in the form of paying a premium for these Kashi Heart to Heart products because they purportedly contained "Nothing Artificial" rather than paying the lesser amount for artificial alternatives.

14.    Plaintiff Dana Paul resides in Atco, New Jersey.  Plaintiff Paul is willing to and has paid a premium for foods that are all natural and has refrained from buying their counterparts that were not all natural.  Plaintiff Paul purchased Kashi's "All Natural" products from retail stores near her home in New Jersey including ShopRite, Acme, Walmart, Wegman's and Genuardi's as follows:

a) **GoLean Honey & Cinnamon Instant Hot Cereal** – Purchased approximately once every two weeks from approximately January 2014 until the end of 2014 just prior to learning of the mislabeling at issue shortly before filing this Complaint;

b) **GoLean Crunchy! Chocolate Almond Protein & Fiber Bars** – Purchased approximately once per month from approximately May 2009 until December 2009;

c) **TLC Original 7 Grain with Sea Salt Pita Crisps** – Purchased approximately once every two weeks from approximately October 2013 until March 2014;

d) **TLC Stoneground 7 Grain Crackers** – Purchased approximately once every two weeks from approximately March 2009 until December 2010.

e) **Pesto Pasta Primavera Entrée** – Purchased approximately once per month from approximately February 2014 until June 2014;

f)  **Margherita Stone-Fired Thin Crust Pizza** – Purchased approximately once per month from approximately February 2010 until July 2010;

g) **TLC Oatmeal Dark Chocolate Chewy Cookies** – Purchased approximately once per month from approximately April 2012 until January 2013;

h) **GoLean Blueberry Waffles** – Purchased approximately once per month from approximately March 2013 until January 2014;

i) **GoLean Original 7 Grain Waffles** – Purchased approximately once per month from approximately May 2013 until December 2013.

15.    Plaintiff Paul has not purchased any Kashi Products since learning of the mislabeling at issue shortly prior to filing this Complaint. Based on the "All Natural" representation on Kashi's product labels, Plaintiff Paul believed that the products she purchased were all natural and relied on this representation in making her purchases.  However, the Kashi products that Plaintiff Paul purchased contained synthetic and artificial ingredients.  While the labels touted the Kashi products as "All Natural," the labels upon which Plaintiff Paul relied did not disclose that synthetic or artificial ingredients were used in the products.  Plaintiff Paul not only purchased the Kashi products because the labels said they were "All Natural," but she paid more money for the Kashi products than she would have had to pay for other products that were not purportedly "All Natural."  Had Plaintiff Paul known the truth that Kashi's food products were not all natural, she would not have purchased the Kashi products, but would have purchased another brand of products that was truly all natural or, if one was not available, would have purchased other non-natural products that were less expensive than the Kashi products. Plaintiff Paul did not receive the "All Natural" products she bargained for when she purchased the "All Natural" Kashi products, and has lost money as a result in the form of paying a premium

10

for Kashi's food products because they were purportedly all natural rather than paying the lesser amount for non-natural alternatives.

16.   Plaintiff Paul also purchased Defendant's "Nothing Artificial" Kashi products from retail stores near her home in New Jersey including ShopRite, Acme, Walmart, and Wegman's and Genuardi's as follows:

   a) **Heart to Heart Instant Oatmeal Apple Cinnamon** – Purchased approximately once every two weeks from approximately January 2012 until September 2012;

   b) **Heart to Heart Original Whole Grain Crackers** – Purchased approximately once per week from approximately January 2012 until June 2012;

   c)  **Heart to Heart Warm Cinnamon Oat Cereal** – Purchased approximately once every two weeks from approximately November 2011 until July 2012.

17.   Plaintiff has not purchased any Kashi Products since learning of the mislabeling at issue in this Complaint.  Based on the "Nothing Artificial" representation on Defendant's Kashi Heart to Heart products' labels, Plaintiff Paul believed that Defendant's Kashi Heart to Heart products she purchased contained nothing artificial and relied on these representations in making her purchases.  However, Defendant's "Nothing Artificial" Kashi Heart to Heart food products Plaintiff Paul purchased contained artificial ingredients.  While Defendant's labels touted these Kashi Heart to Heart products as containing "Nothing Artificial," the labels upon which Plaintiff Paul relied did not disclose that artificial ingredients were used in the products.  Plaintiff Paul not only purchased Defendant's purportedly "Nothing Artificial" Kashi Heart to Heart products because the labels said these products contained "Nothing Artificial," but she paid more money for Defendant's "Nothing Artificial" Kashi Heart to Heart food products she purchased than she would have had to pay for other similar products that contained artificial ingredients.  Had

11

Plaintiff Paul known the truth that the Kashi Heart to Heart products contained artificial ingredients, she would not have purchased the Kashi Heart to Heart products, but would have instead purchased another brand of products that did not contain artificial ingredients or, if one was not available, she would have purchased other products that did not claim to contain nothing artificial and were less expensive than Defendant's Kashi Heart to Heart products.  Plaintiff Paul did not receive the "Nothing Artificial" products she bargained for when she purchased Defendant's Kashi Heart to Heart products, and has lost money as a result in the form of paying a premium for these Kashi Heart to Heart products because they purportedly contained "Nothing Artificial" rather than paying the lesser amount for artificial alternatives.

18.     Defendant Kashi was founded by Philip and Gayle Tauber in La Jolla, California in 1984.[10]  In 1999, Kashi launched its GoLean® line of products, which includes many of the food products at issue in this Complaint.    After posting record sales of nearly $25 million in 1999, Defendant was bought by Kellogg Company in June 2000, for $32 million, and became a wholly-owned subsidiary of Kellogg Company.[11]  After being purchased by Kellogg Company, Defendant remained incorporated in California until approximately March 13, 2013, when it relocated its principal place of business from La Jolla, California to Battle Creek, Michigan.[12] According to a 2009 presentation by David DeSouza, then Vice President and General Manager for Kashi, Defendant's 2008 net sales in North America totaled more than $600 million.[13]

19.     Defendant sells, markets, manages and develops a full spectrum of "All Natural" and "Nothing Artificial" cereal and snack food products, and has expanded its offerings to include frozen entrees and pizzas.  From its beginnings in 1984 to the present day, Defendant

---

[10] Exhibit 6, *Supermarket News*, Kashi Co. Is Purchased By Kellogg, July 24, 2000.
[11] *Id.*
[12] *See* Exhibit 7, *Kashi Offices Moving to Michigan*, Food Business News, March 13, 2012.
[13] *See* Exhibit 8, Presentation by David Desouza, Vice President & General Manger, 2009.

claims to produce a variety of food products made entirely with natural ingredients and all natural flavors. Defendant's products are sold and distributed throughout New York and New Jersey in grocery stores, natural food stores, club warehouse stores and other venues.

## JURISDICTION AND VENUE

20. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Hun is a New York Resident, Plaintiff Paul is a New Jersey resident, and Defendant Kashi is incorporated in California and maintains its principal place of business in Battle Creek, Michigan. The Classes Plaintiffs seek to certify consist of citizens and residents of New York and New Jersey. The amount in controversy exceeds $5,000,000 for Representative Plaintiffs and members of the Classes collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and the Classes, and the profits reaped by Defendant from its transactions with Plaintiffs and the Classes, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the statutory penalties and injunctive and equitable relief sought.

21. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities are located in this judicial district, and Defendant received substantial compensation from such transactions and business activity in this judicial district, including as the result of purchases of the "All Natural" and "Nothing Artificial" Kashi Products from retail locations herein, and the interstate trade and commerce described herein is and has been carried out in part within this judicial district. Moreover, Plaintiff Hun is a resident of Queens County, New York and his purchases of the "All Natural" and "Nothing Artificial" Kashi Products were from retail locations within this judicial district.

13

## BACKGROUND

22.     Webster's New World Dictionary defines "natural" as "produced or existing in nature; not artificial or manufactured."[14]   "All" is defined as "the whole extent or quantity of." Id., "all," definition no. 1 at p. 36.  Thus, the combined use of "All Natural" on the labels of the Kashi Products indicates to the average reasonable person that "the whole extent or quantity of" the ingredients contained in the Kashi Products are "produced or existing in nature; not artificial or manufactured."

23.     Defendant made a far broader and more encompassing representation by labeling its Kashi Products as "All Natural" as opposed to simply saying they were "natural."  While federal regulators have established policies or regulations addressing the meaning of "natural" when used in food labeling, no regulations have specifically addressed the broader representation made by labeling the product as "All Natural," and the only policy to address "natural" labeling requires disclosure of any synthetic or artificial ingredients so as to indicate they are not natural. However, it is noteworthy that although the broader "All Natural" representation was made on Kashi Products' labeling, the presence of the synthetic and artificial ingredients in them also violates the federal regulators' policy and regulations for the narrower "natural" representation.

24.     Specifically, the United States Food and Drug Administration ("FDA") -- which has responsibility for regulating the labeling of the Kashi Products at issue in this case as well as many other foods -- has not promulgated a regulation defining the terms "natural," "All Natural," or "Nothing Artificial."   However, the agency has established a policy defining the outer boundaries of the use of the term "natural" by clarifying that a product is not natural if it contains

---

[14] Exhibit 9, *Webster's New World Dictionary*, "All" and "Natural" definitions.

14

color, artificial flavors, or synthetic substances.[15]  The FDA states: "the agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food."  58 Fed. Reg. 2302, 2407 (Jan. 6, 2003).  Although this definition is not a regulation, it is the "most definitive statement of the agency's view."[16]

25.     Courts and trade members have requested that the FDA provide a regulatory definition of "natural," however, the FDA has declined to provide a determination because the time required to conduct a public hearing "would take two to three years to complete," and the agency's resources are currently devoted to other, higher priorities.[17]

26.     The terms "synthetic" and "artificial" closely resemble each other and in common parlance are taken as synonymous.  The scientific community defines "artificial" as something not found in nature, whereas a "synthetic" is defined as something man-made, whether it merely mimics nature or is not found in nature.   In the scientific community, "synthetic" includes substances that are also "artificial," but a synthetic substance also can be artificial or non-artificial.    However, the common understanding of "artificial" resembles the scientific community's definition of "synthetic."   Indeed, Webster's New World Dictionary defines "artificial" as "anything made by human work, especially if in intimation of something natural,"

---

[15] *See* Exhibits 10 and 11, FDA informal policies available at
http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm and
http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.
http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm
and http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.
[16] *See* Exhibit 12, letter from Michael M. Landa, Acting Director, Center for Food Safety and Applied Nutrition to Judge Jerome B. Simandle dated September 16, 2010, filed in *Ries et al., v. Hornell Brewing Co., Inc.,* Case No. 10-1139 (N.D.Cal.), Dkt. No. 54.
[17] *Id*.

whereas "synthetic" is defined as "a substance that is produced by chemical synthesis and is used as a substitute for a natural substance which it resembles."[18]

27.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."   7 U.S.C. § 6502(21).   See also 7 C.F.R. § 205.1, et seq. (defining, in USDA's National Organic Program regulations, a "nonsynthetic" as "a substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. § 6502(21)").

28.     In addition to defining "synthetic," federal authorities have also expressly recognized numerous chemicals as synthetics, as discussed in the following paragraphs.  Some of these synthetics are also artificial substances.

29.     **Ascorbic Acid**.  Ascorbic acid is a chemically modified form of vitamin C used in foods as a chemical preservative (21 C.F.R. § 182.3013) that is a recognized synthetic by federal regulation.  7 C.F.R. 205.605(b).  Unlike natural vitamin C, synthetic Ascorbic Acid is generally produced from corn or wheat starch being converted to glucose, then to sorbitol and then to Ascorbic Acid through a series of chemical processes and purification steps.  The FDA prohibits labeling synthetic vitamins such as Ascorbic Acid as "natural."  62 Fed. Reg. 49826.

30.     **Calcium Pantothenate**.  Calcium Pantothenate is a synthetic form of one of the vitamins in the B complex, vitamin B5, pantothenic acid.  Calcium Pantothenate is often used in dietary supplements because, as a salt, it is more shelf-stable than natural vitamin B5.  In commercial food production, Calcium Pantothenate is "prepared synthetically from

---

[18] Exhibit 9, Webster's Dictionary definitions "artificial" and "synthetic."

16

isobutyraldehyde and formaldehyde" pursuant to federal regulation. 21 C.F.R. 184.1212. The FDA prohibits labeling synthetic vitamins such as Calcium Pantothenate as "natural." 62 Fed. Reg. 49826.

31.     **Calcium Phosphate**. Calcium Phosphate is an insoluble, non-acid calcium salt of phosphoric acid. It is a colorless powder used in agricultural fertilizers, as a plastic stabilizer, and sometimes in baking powders. Calcium Phosphate in any of three forms (mono-, di- or tribasic) is a recognized synthetic chemical under federal regulations. See 7 C.F.R. 205.605(b).

32.     **Glycerin**. Glycerin (a/k/a Glycerine, Glycerol or Vegetable Glycerin) is a synthetic alcohol that rarely exists in its free form in nature. It is used in some food products as a sweetener, as a preservative, or as a thickening agent. Glycerin is commonly manufactured for commercial use through the hydrolysis of fats and oils during the manufacturing of soap products, or synthesized from the hydrogenolysis of carbohydrates or from petrochemicals. Glycerin could, alternatively, be produced through a fermentation process using yeast; however, due to the resulting low yields and presence of byproducts formed through the fermentation process, commercial manufacturers use the synthetic processes above to produce Glycerin rather than the more natural fermentation method. Commercial glycerin used in food products manufactured by either of the two commonly used methods is a recognized synthetic product. 21 CFR 172.866; 7 CFR 205.605(b); 7 CFR 205.603; 21 CFR 178.3500. It is believed, and therefore averred, that the Glycerin in Kashi's products is synthesized using one or both of the two commonly used manufactured methods – hydrolysis of fats and oils or hydrogenolysis of carbohydrates or propylene – and not derived naturally.

33.     **Hexane-Processed Soy Ingredients**. Many Kashi Products contain different types of soy products produced through the use of a volatile synthetic solvent, hexane. Hexane is

17

a constituent of gasoline obtained from crude oil, natural gas liquids, or petroleum refinery processing.   40 C.F.R. § 99.2155.   According to the United States Occupational Safety and Health Administration ("OSHA"), hexane is a narcotic and neurotoxic agent which can cause irritation to the eyes and upper respiratory tract.   Commercial hexane also contains benzene, a known hematologic poison linked to chronic leukemia.  The Hexane-Processed Soy Ingredients in Kashi's Products include soy lecithin, soy proteins, soy grits, soy flour, soybean oil and soybean fiber.  Defendant admits hexane-processed soy ingredients in the Kashi Products are not natural.[19]   Defendant also admits hexane-processing leaves residual hexane in the Kashi Products.[20]

34.    Defendant touts its use of highly-processed soy in certain Kashi Products for its nutritional advantages and environmental impact, but admits that these Kashi Products containing processed soy products also contain hexane.[21]   Kashi justifies its use of hexane laden Hexane-Processed Soy Ingredients by suggesting that the only commercially available method of isolating soy products is through the use of hexane.[22]   However, the Soyfoods Association of America indicates there are other ways to extract soy products for use in commercial foods without the use of hexane.[23]

35.    **Potassium Bicarbonate**.  Potassium Bicarbonate (a/k/a potassium hydrogen carbonate or carbonic acid) is a recognized synthetic compound by regulation.   7 C.F.R. 205.601(i)(9).  While it is often used in baked goods as a leavening agent or as a foaming/fizzing agent in beverages, it is more commonly used as a chemical agent in dry fire extinguishers, as a

---

[19] *See*, Exhibit 3 (class cert order) at 23 ("Kashi admits that hexane-processed soy ingredients do not even satisfy Kashi's own definition of "All Natural[.]")
[20] *Id*. at 15 n.3.
[21] Exhibit 13, *And the Journey Continues*, Kashi (last visited February 17, 2012).
[22] *Id*.
[23] Exhibit 14, *Soy Information FAQ*, Soyfoods Association of North America

fertilizer, as an anti-fungal agent, and as a feed supplement for livestock.  It is produced by reacting potassium carbonate (also a synthetic substance) with carbon dioxide and crystallizing the final product.

36.     **Pyridoxine Hydrochloride**.  Pyridoxine Hydrochloride is an artificial form of one component of the vitamin B complex, vitamin B6 (a/k/a pyridoxine).  Natural vitamin B6 works as a coenzyme to assist other enzymes function properly and as an enzyme for the production of amino acids through three components, pyrodixine, pyridoxal, and pyridoxamine.  Although the principal form of vitamin B6 with the most importance in human metabolism is pyridoxal, many companies utilize pyridoxine to make artificial vitamin B6 supplements because it is the least expensive to produce commercially.  Pyridoxine is required by the body for utilization of energy in the foods you eat, production of red blood cells, and proper functioning of nerves.  Commercially prepared pyridoxine according to federal regulation is "prepared by chemical synthesis" as Pyridoxine Hydrochloride to help make the chemical more water-soluble. 21 C.F.R. § 184.1676.  The FDA prohibits labeling synthetic vitamins such as Pyridoxine Hydrochloride as "natural."  62 Fed. Reg. 49826.

37.     **Sodium Acid Pyrophosphate**.  Sodium Acid Pyrophosphate (also frequently known as SAPP, disodium dihydrogen pyrophosphate, or disodium dihydrogen diphosphate)[24] is a recognized synthetic chemical by federal regulation.  7 C.F.R. § 205.605(b).  Sodium Acid Pyrophosphate is a chemical preservative often used as a leavening agent in baked goods, in canning seafood to prevent grit from forming, and to prevent discoloration of potatoes and sugar syrups.  The FDA recently issued a warning letter to another company indicating that the use of

---

[24] For full list of synonyms of sodium acid pyrophosphate from the National Institute of Health, *see* http://pubchem.ncbi.nlm.nih.gov/summary/summary.cgi?cid=24451 also attached hereto as Exhibit 15.

the term "All Natural" on the label of a food product containing Sodium Acid Pyrophosphate renders the product's label false and misleading.[25]

38.    **Sodium Citrate**.  Sodium Citrate, the sodium salt of citric acid synthesized by reacting sodium carbonate with citric acid, is often used as an anticoagulant or blood thinner.  It is a recognized synthetic chemical under federal regulation (7 C.F.R. § 205.605(b)) that is sometimes used in food as a preservative or to provide a tart flavor in soft drinks, club soda, juices, and in some sausages.

39.    **Sodium Phosphate.**  Sodium Phosphate is a generic term for any sodium salts of phosphoric acid.  Various Sodium Phosphates are manufactured by treating phosphoric acid with a source of sodium, such as sodium bicarbonate, and are recognized to be synthetic by federal regulation.  7 C.F.R. § 205.605(b).  Three common Sodium Phosphates can be found in commercial products, monosodium phosphate, disodium phosphate, and trisodium phosphate.  Monosodium phosphate is often used as a laxative, disodium phosphate is often used in food as an emulsifier or as a leavening agent, and trisodium phosphate is often used as a strong chemical detergent.

40.    **Tocopherols**.  Natural vitamin E is an essential vitamin complex of eight components – four different tocopherols and four different tocotrienols – that functions best when in the proper ratio of components.  Tocopherols in isolation, sometimes called mixed Tocopherols, are a class of chemical compounds with some vitamin E properties often used as a chemical food preservative (21 C.F.R. § 182.3890) and are recognized to be synthetic by federal regulation. See 7 C.F.R. § 205.605(b).  To provide some health benefits of vitamin E, companies

---

[25] Exhibit 16,  November 16, 2011 Warning Letter to Alexia Foods, Inc., available online at http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm281118.htm ("[b]ecause your products contain this synthetic ingredient [disodium dihydrogen pyrophosphate], the use of the claim 'All Natural' on this product label is false and misleading, and therefore your product is misbranded under section 403(a)(1) of the Act").

often use synthetic or artificial Tocopherols in lieu of natural vitamin E due to their lower cost. One example of an artificial vitamin E used by Kashi, alpha tocopherol acetate, is created from the condensation of the petrochemical racemic isophytol with trimethyl hydroquinone, followed by treatment using acetic acid. 21 C.F.R. § 184.1890. The FDA prohibits labeling synthetic vitamins such as Tocopherols as "natural." 62 Fed. Reg. 49826.

41. **Xanthan Gum**. Xanthan Gum is a polysaccharide derived from the bacterial coat of the Xanthomonas campesris bacterium. Although derived from a natural bacterium, Xanthan Gum is commercially manufactured as a sodium, potassium or calcium salt and is considered to be synthetic by federal regulation. 7 C.F.R. § 205.605(b). Xanthan Gum is used in food products such as beverages as a thickening or stabilizing agent, and as an emulsifier in salad dressings. Although used in many of the Kashi Products, Defendant criticizes the use of this ingredient as "[p]rocessed using petrochemicials" much like the hexane processed soy products also in many Kashi Products.[26]

42. As explained above, the foregoing ingredients are classified as synthetic or artificial by federal regulations. Although some of these regulations were promulgated pursuant to the USDA's National Organic Program and the USDA permits foods to be labeled organic that contain these ingredients, this is immaterial to whether Kashi's use of these ingredients in foods labeled "All Natural" or "Nothing Artificial" is false and misleading to the average consumer. Indeed, market studies, including one prepared for trial in the California Action, show consumers would not expect to encounter a synthetic or artificial ingredient in a food labeled "All Natural" or organic, and consumers would not expect to encounter an artificial ingredient in foods labeled "Nothing Artificial" or organic.

---

[26] Exhibit 17, Kashi Online Ingredient Decoder, as appearing in the May 2011 issue of *Real Simple*, pp. 264-265.

43.     Unfortunately, as explained more fully below, the Kashi Products labeled "All Natural" never disclosed that the ingredients used were synthetic or artificial, despite the "All Natural" representations on the products' labels, and the Kashi Products labeled "Nothing Artificial" never disclosed that the ingredients used were artificial, despite the "Nothing Artificial" representations on the products' labels.

## DEFENDANT'S USE OF NON-NATURAL INGREDIENTS

44.     American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet so they frequently take nutrition information into consideration in selecting and purchasing food items.  Product package labels, including nutrition labels, are vehicles that convey nutrition information to consumers that they can and do use to make purchasing decisions.  As noted by FDA Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."[27]

45.     The prevalence of claims about nutritional content on food packaging in the United States has increased in recent years as manufacturers have sought to provide consumers with nutrition information and thereby influence their purchasing decisions.  An FDA Food Label and Package Survey found that approximately 4.8% of food products sold in the United States had either a health claim or a qualified health claim on the food package, and that more than half (53.2%) of the food products reviewed had nutrient content claims on the packaging.[28]

46.     American consumers are increasingly seeking "All Natural" ingredients in the foods they purchase.  Although this segment of the health food market was once a niche market, natural foods have increasingly becoming part of the mainstream food landscape over the last

---

[27] Exhibit 18, Transcript for FDA's Media Briefing on Front-of-Pack Labeling, October 20, 2009, available at http://www.fda.gov/downloads/NewsEvents/Newsroom/MediaTranscripts/UCM187809.pdf.
[28] Exhibit 19, FDA Front of Package Claims Survey.

several years.  According to *Natural Foods Merchandiser*, a leading information provider for the natural, organic and healthy products industry, the natural food industry enjoyed over $81 billion in total revenue in 2010, and grew over 7% in 2009.[29]  The market for all natural foods grew 9% in 2010 to $39 billion, and 2010 sales were 63% higher than sales in 2005.[30]  Consumer demand for all natural foods was predicted to grow 103% between 2010 and 2015 with annual sales exceeding $78 billion in 2015.[31]

47.    Consumers desire "All Natural" food products for a myriad of reasons, including wanting to live a healthier lifestyle, perceived benefits in avoiding disease and other chronic conditions, as well as to increase weight loss and avoid chemical additives in their food.  The "All Natural" branding also appears to appeal to individual consumers' interest in supporting sustainable living and environmentally sensitive food consumption, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.  As a result, consumers are willing to pay a higher price for "All Natural" food and beverages.

48.    According to an article in *The Economist*, "natural" products are a fast growing market because of the power of "mother nature" in the hands of marketers, which conjures up images of heart-warming wholesomeness and rustic simplicity.[32]  According to this publication, a chief selling point of the organic-food industry is that no man-made chemicals are used in the production process.

---

[29] *See Natural and Organic Products Industry Sales Hit $81 Billion*, Natural Foods Merchandiser, (June 1, 2011), available at: http://www.prnewswire.com/news-releases/natural-and-organic-products-industry-saleshit-81-billion-122958763.html and attached hereto as Exhibit 20.
[30] http://www.marketwire.com/press-release/natural-and-organic-food-and-beverage-market-to-double-by-2015-1525854.htm (last visited February 9, 2012) attached hereto as Exhibit 21.
[31] *Id.*
[32] Exhibit 22, *Chemical Blessings: What Rousseau got Wrong*, The Economist, February 4, 2008, available at http://www.economist.com/node/10633398.

23

49.     Kashi knows that consumer demand for all natural products is increasing, and encourages retailers to "Offer Natural Products in Your Operation -- and Watch Your Profits Grow."[33]   Defendant touts the financial rewards of tapping into the natural foods market, claiming "Minimal Ingredients.  Maximum Sales and Profit.  It's the Natural Way."[34]   Kashi's corporate representative testified in the California Action that this brochure reflects Defendant's marketing strategy.[35]   Kashi also understands that Kashi consumers are purchasing Kashi's food products for their perceived health benefits.  For instance, Kashi states that "Kashi offers simple foods that taste great and provide true sustenance for those on a journey toward a healthier life."[36]

50.     In order to capture and tap into this growing market and the hunger of consumers for the perceived healthier, chemical free benefits of "All Natural" foods, Kashi labeled and advertised the Kashi Products as "All Natural" and "Nothing Artificial."

51.     A reasonable consumer's understanding of the term "natural" comports with federal regulators and common meaning.  That is, a reasonable consumer understands the term "natural" to mean that none of the ingredients are synthetic and none of the ingredients are artificial.  When the term "natural" is broadened to "All Natural" as on the Kashi Products' labels, there is no question that a reasonable consumer understands the term "All Natural" to mean that none of the ingredients are synthetic and none of the ingredients are artificial.  In other words, by claiming that Kashi Products are "All Natural," Defendant has raised the bar and both warranted and represented to consumers that these Kashi Products contain only natural ingredients, and that none of the components of these Kashi Products is artificial or synthetic.

---

[33]Exhibit 23, Kashi Marketing Brochure *The Word is "All Natural."*
[34] *Id.*
[35] Exhibit 5, at 128:5-17.
[36] *Id.* at 4.

52.      Likewise, a reasonable consumer's understanding of "Nothing Artificial" comports with common meaning.  That is, a reasonable consumer understands the term "artificial" to mean something that is man-made, and the term "nothing" to mean none.  By combining these terms and claiming Kashi Products contain "Nothing Artificial," Kashi warranted and represented to consumers that none of the components of these Kashi Products is artificial, *i.e.,* nothing is man-made.

53.      In using the terms "All Natural" and "Nothing Artificial," Kashi is well aware of their common meaning.  For instance, in a set of "answers to common questions about" "natural and organic foods" available on Kashi's parent Kellogg's website during 2011, Kellogg used and adopted the FDA and USDA's definitions to answer the question, "What are 'natural' foods?"[37]

---

[37] *See* Exhibit 24, attached hereto, previously available at www.kelloggsnutrition.com/eat-well/natural-organic-foods.aspx.





**What are "natural" foods?**

The U.S. Food and Drug Administration informally defines "**natural**" foods as foods without anything artificial or synthetic included or added, including color additives. The U.S. Department of Agriculture (USDA) policy is that a natural product does not contain any artificial flavor or color, chemical preservatives, or any other artificial or synthetic ingredient, and the product and its ingredients are not more than minimally processed.

Defendant is also aware of these definitions, and has stated that "[n]atural food is made without artificial ingredients like colors, flavors or preservatives and is minimally processed" and that "[a] natural ingredient is one that comes from or is made from a renewable resource found in nature."[38]

54.     Commercial marketing studies are replete with evidence of the materiality of "All Natural" and "Nothing Artificial" claims to purchasers.  A 2010 study by the marketing organization *Mintel* reported that 75% of 25-34 year-olds, 74% of 18-24 year-olds, and 55% of 55-64 year-olds are either very or somewhat interested in consuming all natural foods, that more than 6 in 10 users of natural/organic products "agree that it's worth paying more for

---

[38] Exhibit 25, Kashi 2009 Yearbook.

natural products," and that "demand for all-natural products is high among young adults and will remain relatively strong in years to come, as these young people mature, start families, and gain greater influence."[39]   Indeed, sales of food products with "natural" claims exceed $20 billion dollars annually.[40]

55.     Numerous studies further show the materiality of "natural" label claims.  In 2008, market research group Packaged Facts reported "[t]he overall trend is clear...[n]atural and organic products are flying high in segments that are otherwise flat."[41]  By 2009, "Natural" had become the most popular claim when launching new foods and beverages in the United States.[42]  A 2009 study reported 50% of consumers rated a "Natural" claim on a food package as either "Very Important" or "Important."[43]   In fact, as a 2011 study reports, 25% of consumers rated "100 percent natural" or "all natural" as "the best description to read on a food label."[44]

56.     Defendant also reinforced its "All Natural" and "Nothing Artificial" claims by making other statements to consumers directly on the Kashi Products' labels.  For instance, some labels include reinforcing statements such as "No Artificial Ingredients," "Only Minimally Processed," "No Artificial Sweeteners, Flavors, Colors or Preservatives," and "At Kashi, The Seven Whole Grain Company, we believe everyone has the power to make positive, healthy

---

[39] Exhibit 26, *Consumer Attitudes Toward Natural and Organic Food and Beverages,* Mintel, March 2010 at 52.
[40]   Exhibit   27,   *U.S.   Health   Eating   Trends*,   Tom   Pirovano,   January   26,   2010,   available   at http://www.nielsen.com/us/en/newswire/2010/healthy-eating-trends-pt-1-commitment-trumps-the-economic-pinch.html.
[41] Exhibit 28, *Natural and Organic Food and Beverage Trends in the U.S.*, Packaged Facts, September 2008, at 3-5.
[42] Exhibit 29, *National Survey: Green is Officially Mainstream – But Consumers Are Confused, Skeptical About Products*, Shelton Group, June 29, 2009, at p 2.
[43] Exhibit 30, *Beyond Organic: How Evolving Consumer Concerns Influence Food Purchases*, Context Marketing, October 2009, at p. 4.
[44] Exhibit 31, *Survey Finds 'Grown in the USA' Surging in Popularity, Right Behind 'Natural' and 'Organic,'* Shelton Group, 2011.

lifestyle changes.  So for 20 years it's been our mission to provide great tasting, all natural whole grain foods to help you live longer and live well."

57.     Defendant further reinforced these "All Natural" and "Nothing Artificial" claims through its website, advertising campaigns, and Kashi brand marketing generally.  Kashi markets its products as providing "Real Food Values" and being "7 Whole Grains on a Mission™."[45] Kashi has made statements on its website such as "We can't say it enough -- We're passionate about good, all-natural foods,"[46] and "We make our foods with simple, natural ingredients."[47] Defendant also claims "We believe real food comes from real ingredients found in kitchens like yours," and espouses values including to "Find simple, natural ingredients and don't mess them up."[48]



---

[45] *See* Kashi's "Real Food Values," available at http://www.kashi.com/real_food/values and attached hereto as Exhibit 32.
[46] *See* Kashi's "Our Foods," available at http://www.kashi.com/our_foods and attached hereto as Exhibit 33.
[47]     Exhibit   34,   Website   Archive,   *What   We   Believe*,   Kashi,   available   at https://web.archive.org/web/20140705045410/https://www.kashi.com/what-we-believe (website image dated July 5, 2014).
[48] *Id.*

58.     Defendant also holds itself out as a trusted leader who is attempting to assist consumers in having access to the information necessary to make informed choices.  Defendant touts itself as being "a leading natural brand focused on positive nutrition,"[49] and offering a "Natural Living Library" on its website, including entries like "Natural Nutrition in Pregnancy."[50]  On its website, in magazine ads, and in other marketing materials, Defendant also showcases its all-natural real-food image, offering consumers the "Kashi Ingredient Decoder™," which Defendant touts "will help you figure out what's real on ingredient labels" and as a "list of ingredients we'd use at Kashi and which we'd avoid to help you keep your own food real."[51]

59.     Consumers lack the meaningful ability to test or independently ascertain the truthfulness of food labeling claims such as "All Natural" and "Nothing Artificial," especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer.  Thus, reasonable consumers must and do rely on food companies such as Defendant to honestly report the nature of a food's ingredients, and food companies such as Defendant intend and know that consumers rely upon food labeling statements in making their purchasing decisions.  Such reliance by consumers is also eminently reasonable, since food companies are prohibited from making false or misleading statements on their products under federal, New York and New Jersey law.  *See* 21 U.S.C. § 343(a)(1) (providing food is misbranded if its labeling is false and misleading); N.Y. Agric. & Mkts. Law § 201 (same); N.J.S.A. § 24:5-17(a) (same).

---

[49] Exhibit 35, *Meet Us*, Kashi, available at http://www.kashi.com/meet_us/history (last visited February 9, 2012).
[50] Exhibit 36 *Natural Nutrition in Pregnancy*, Kashi, available at https://www.kashi.com/natural-living (last visited September 8, 2013).
[51] Exhibit 17, *Ingredient Decoder*, Kashi, available at https://www.kashi.com/natural-living/progressive-nutrition/real-food-kashi-ingredient-decoder (last visited September 8, 2013).

60.     While Defendant labeled and advertised its products as "All Natural," the Kashi Products labeled as "All Natural" contained synthetic and artificial ingredients, including but not limited to the ingredients identified above in Paragraphs 30-42.  Likewise, while Defendant labeled and advertised its products as "Nothing Artificial," the Kashi Products labeled as "Nothing Artificial" contained artificial ingredients, including but not limited to the Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate ingredients identified above in Paragraphs 30-42.  While the Kashi Products' labels did disclose that these products contained many of the synthetic and artificial substances, the labels did not disclose that these ingredients were synthetic or artificial, and, in the case of the soy ingredients processed with Hexane, did not identify that these components existed in the Kashi Products at all.  These omissions are significant and material given the Kashi Products' "All Natural" and "Nothing Artificial" representations on the Kashi Products' labels, and numerous reinforcing statements.  Based on the "All Natural" representations, one would normally expect that none of the ingredients in "All Natural" Kashi Products would be synthetic or artificial.  Similarly, based on the "Nothing Artificial" representations, one would normally expect that none of the ingredients in "Nothing Artificial" Kashi Products would be artificial.

61.     Defendant knew that it made the "All Natural" and "Nothing Artificial" representations in regard to the Kashi Products, as those statements appear on the products' packaging.  Defendant also knew that these claims were false and misleading, because it knew what ingredients were contained in each of the Kashi Products.  Defendant also retains expert nutritionists, food chemists, other scientists, regulatory compliance personnel, and attorneys, and thus had the ability to know, and did know, that many of the ingredients in the Kashi Products were synthetic and artificial.   Indeed, all but one of the synthetic or artificial ingredients at issue

in the Kashi Products labeled "All Natural" and "Nothing Artificial" are recognized as synthetic chemicals by federal regulations.

62.    Defendant knows the Kashi Products' "All Natural" and "Nothing Artificial" claims are false and misleading to consumers.  As Defendant's parent company Kellogg stated in its 2009 Corporate Responsibility Report[52]:

> EXPLORING A NATURAL DEFINITION: As consumers grow increasingly interested in healthful foods, more and more food companies are marketing their products as "natural." Yet this term lacks clear definition from the U.S. Food and Drug Administration, leaving consumers understandably confused about what it actually means.  Kashi, a natural food company that operates as a wholly owned subsidiary of Kellogg Company, has been working with external leaders and advocacy groups within the natural products industry to create a "natural" standard for food.

In making this statement, Defendant's parent essentially admits that it knows that consumers are "confused" by Kashi's "All Natural" claims (*i.e.*, consumers reasonably expect that products with "All Natural" representations will comply with the FDA's definition, which comports with common understanding, as explained herein, yet companies such as Kashi are including ingredients in their purportedly "All Natural" products that are inconsistent with the express claims on their products because the FDA has not promulgated a regulation defining "natural" or "All Natural").

63.    According to ingredient lists on the Kashi Products' labels, and in direct contrast to Defendant's promises on those labels, the Kashi Products labeled as "All Natural" each contain between one (1) and seven (7) of the recognized synthetic and artificial ingredients identified herein, including at least 74 of the Kashi Products containing Hexane-Processed Soy Ingredients, as follows:[53]

---

[52] Exhibit 37, Kellogg Company 2009 Corporate Responsibility Report at p.29.
[53] A chart listing each of the Kashi "All Natural" Products, and the identified non-natural ingredients contained therein, is attached to this Complaint as Exhibit 1.  A copy of the Kashi "All Natural" Products' labels and ingredients Plaintiffs have amassed thus far is attached hereto as Exhibit 38.

a.      7 Grain Waffles:  Hexane-Processed Soy Ingredients, Monocalcium Phosphate, and Sodium Acid Pyrophosphate

b.      7 Whole Grain Nuggets Cereal: Tocopherols.

c.      Almond Soft-Baked Cereal Squares: Glycerin, Potassium Bicarbonate, Hexane-Processed Soy Ingredients.

d.      Apple Cobbler Soft and Chewy Bars: Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Sodium Acid Pyrophosphate.

e.      Banana Chocolate Chip Soft and Chewy Bars: Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Sodium Acid Pyrophosphate.

f.      BBQ Recipe Chicken Pizza: Xanthan Gum.

g.      Berry Blossoms Cereal: Hexane-Processed Soy Ingredients and Tocopherols.

h.      Berry Muffin Soft and Chewy Bars: Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Sodium Acid Pyrophosphate.

i.      Black Bean Mango Entrée: Ascorbic Acid.

j.      Blueberry Waffles: Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Sodium Acid Pyrophosphate.

k.      Caribbean Carnival Stone-Fired Thin Crust Pizza: Hexane-Processed Soy Ingredients and Xanthan Gum.

l.      Chicken Enchilada Entree: Xanthan Gum, Hexane-Processed Soy Ingredients.

m.      Chicken Florentine Entrée: Hexane-Processed Soy Ingredients.

n.      Chicken Pasta Pomodoro Entrée: Hexane-Processed Soy Ingredients.

o.      Chocolate Soft-Baked Squares: Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate.

p.      Cocoa Beach Granola: Hexane-Processed Soy Ingredients and Tocopherols.

q.      Five Cheese & Tomato Stone-Fired Thin Crust Pizza: Xanthan Gum.

r.      Golden Goodness Cereal: Tocopherols.

s.      GoLean Blueberry Waffles: Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Sodium Acid Pyrophosphate.

t.      GoLean Chewy Chocolate Almond Toffee Protein & Fiber Bars: Glycerin and Hexane-Processed Soy Ingredients.

u.      GoLean Chewy Cookies 'N Cream Protein & Fiber Bars: Glycerin, Hexane-Processed Soy Ingredients.

v.      GoLean Chewy Malted Chocolate Crisp Protein & Fiber Bars: Hexane-Processed Soy Ingredients and Tocopherols.

w.      GoLean Chewy Oatmeal Raisin Cookie Protein & Fiber Bars: Hexane-Processed Soy Ingredients.

x.      GoLean Chewy Peanut Butter & Chocolate Protein & Fiber Bars: Hexane-Processed Soy Ingredients.

y.      GoLean Chocolate Malted Crisp Protein & Fiber Bars: Glycerin and Hexane-Processed Soy Ingredients.

z.      GoLean Creamy Instant Hot Cereal Truly Vanilla:  Hexane-Processed Soy Ingredients.

aa.     GoLean Crisp! Toasted Berry Crumble Cereal:   Glycerin, Hexane-Processed Soy Ingredients and Tocopherols.

bb.     GoLean Crunch! Cereal:    Hexane-Processed Soy Ingredients and Tocopherols.

cc.     GoLean Crunch! Honey Almond Flax Cereal:   Hexane-Processed Soy Ingredients and Tocopherols.

dd.     GoLean Crunchy! Chocolate Almond Protein & Fiber Bars:   Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

ee.     GoLean Crunchy! Chocolate Caramel Protein & Fiber Bars:   Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients and Tocopherols.

ff.     GoLean Crunchy! Chocolate Peanut Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

gg.     GoLean Crunchy! Chocolate Pretzel Protein & Fiber Bars:   Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

hh.     GoLean Crunchy! Cinnamon Coffee Cake Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

ii.     GoLean Honey & Cinnamon Instant Hot Cereal:  Hexane-Processed Soy Ingredients and Tocopherols.

jj.     GoLean Oatmeal Raisin Protein & Fiber Bars:  Glycerin and Hexane-Processed Soy Ingredients.

kk.     GoLean Original 7 Grain Waffles:  Hexane-Processed Soy Ingredients and Monocalcium Phosphate.

ll.     GoLean Peanut Butter & Chocolate Protein & Fiber Bars:  Glycerin and Hexane-Processed Soy Ingredients.

mm.    GoLean Roll! Caramel Peanut Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

nn.     GoLean Roll! Chocolate Peanut Protein & Fiber Bars: Ascorbic Acid, Glycerin, Pyridoxine Hydrochloride, Hexane-Processed Soy Ingredients and Tocopherols.

oo.     GoLean Roll! Chocolate Turtle Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

pp.     GoLean Roll! Fudge Sundae Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

qq.     GoLean Roll! Oatmeal Walnut Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

rr.     GoLean Strawberry Flax Waffles:  Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Sodium Acid Pyrophosphate.

ss.     Honey Sunshine Cereal:    Hexane-Processed Soy Ingredients and Tocopherols.

tt.     Lemongrass Coconut Chicken Entrée:  Hexane-Processed Soy Ingredients and Xanthan Gum.

uu.     Margherita Stone-Fired Thin Crust Pizza:   Xanthan Gum.

vv.     Mayan Harvest Bake Entrée:  Hexane-Processed Soy Ingredients.

ww.     Mexicali Black Bean Stone-Fired Thin Crust Pizza:  Xanthan Gum.

xx.     Mountain Medley Granola:  Glycerin, Hexane-Processed Soy Ingredients and Tocopherols.

yy.     Mushroom Trio & Spinach Stone-Fired Thin Crust Pizza:  Xanthan Gum.

zz.     Pesto Pasta Primavera Entrée:  Hexane-Processed Soy Ingredients.

aaa.     Pesto Stone-Fired Thin Crust Pizza:  Xanthan Gum.

bbb.     Red Curry Chicken Entrée:  Xanthan Gum.

ccc.     Roasted Garlic Chicken Stone-Fired Thin Crust Pizza:  Xanthan Gum.

ddd.     Roasted Vegetable Stone-Fired Thin Crust Pizza:  Xanthan Gum.

eee.     Southwest Style Chicken Entrée:  Hexane-Processed Soy Ingredients.

fff.     Spicy Black Bean Enchilada Entrée:  Hexane-Processed Soy Ingredients, Sodium Acid Pyrophosphate and Xanthan Gum.

ggg.     Summer Berry Granola:    Hexane-Processed Soy Ingredients and Tocopherols.

hhh.     Sweet & Sour Chicken Entrée:  Ascorbic Acid.

iii.     TLC Baked Apple Spice Soft-Baked Cereal Bars:  Glycerin, Hexane-Processed Soy Ingredients, Sodium Acid Pyrophosphate and Xanthan Gum.

36

jjj.    TLC Blackberry Graham Soft-Baked Cereal Bars:  Glycerin, Hexane-Processed Soy Ingredients, Sodium Acid Pyrophosphate, Sodium Citrate and Xanthan Gum.

kkk.    TLC Cherry Dark Chocolate Chewy Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

lll.    TLC Cherry Vanilla Soft-Baked Cereal Bars:  Glycerin, Hexane-Processed Soy Ingredients, Sodium Acid Pyrophosphate and Xanthan Gum.

mmm. TLC Country Cheddar Cheese Crackers:  Hexane-Processed Soy Ingredients, Sodium Phosphates and Potassium Bicarbonate.

nnn.    TLC Cranberry Walnut Fruit & Grain Bars:  Glycerin and Hexane-Processed Soy Ingredients.

ooo.    TLC Dark Chocolate Coconut Fruit & Grain Bars:  Glycerin and Hexane-Processed Soy Ingredients.

ppp.    TLC Dark Chocolate Coconut Layered Granola Bar:  Glycerin and Hexane-Processed Soy Ingredients.

qqq.    TLC Dark Mocha Almond Chewy Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

rrr.    TLC Fire Roasted Veggie Party Crackers:  Monocalcium Phosphate, Potassium Bicarbonate and Sodium Acid Pyrophosphate.

sss.    TLC Happy Trail Mix Chewy Cookies:  Glycerin, Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Tocopherols.

ttt.    TLC Honey Almond Flax Chewy Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

uuu.   TLC Honey Sesame Snack Crackers:  Monocalcium Phosphate, Hexane-Processed Soy Ingredients and Sodium Acid Pyrophosphate.

vvv.   TLC Honey Toasted 7 Grain Crunchy Granola Bars:  Hexane-Processed Soy Ingredients and Tocopherols.

www.  TLC Mediterranean Bruschetta Snack Crackers:  Potassium Bicarbonate.

xxx.   TLC Natural Ranch Snack Crackers:  Calcium Phosphate, Potassium Bicarbonate and Sodium Acid Pyrophosphate.

yyy.   TLC Oatmeal Dark Chocolate Chewy Cookies:  Glycerin, Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Tocopherols.

zzz.   TLC Oatmeal Raisin Flax Chewy Cookies:  Glycerin, Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Tocopherols.

aaaa.  TLC Original 7 Grain Snack Crackers:  Monocalcium Phosphate, Potassium Bicarbonate and Sodium Acid Pyrophosphate.

bbbb.  TLC Original 7 Grain With Sea Salt Pita Crisps:  Hexane-Processed Soy Ingredients and Tocopherols.

cccc.  TLC Peanut Peanut Butter Chewy Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

dddd.  TLC Peanutty Dark Chocolate Layered Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

eeee.   TLC Pumpkin Pecan Fruit & Grain Bars:  Glycerin and Hexane-Processed Soy Ingredients.

ffff.   TLC Pumpkin Pecan Layered Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

38

gggg.   TLC Pumpkin Pie Fruit & Grain Bars:  Glycerin and Hexane-Processed Soy Ingredients.

hhhh.   TLC Pumpkin Spice Flax Crunchy Granola Bars:  Hexane-Processed Soy Ingredients and Tocopherols.

iiii.    TLC Raspberry Chocolate Fruit & Grain Bars:  Glycerin and Hexane-Processed Soy Ingredients.

jjjj.    TLC Ripe Strawberry Soft-Baked Cereal Bars:   Glycerin, Hexane-Processed Soy Ingredients, Sodium Acid Pyrophosphate and Xanthan Gum.

kkkk.   TLC Roasted Almond Crunch Crunchy Granola Bars:  Hexane-Processed Soy Ingredients and Tocopherols.

llll.    TLC Roasted Garlic & Thyme Party Crackers:  Potassium Bicarbonate and Tocopherols.

mmmm.     TLC Stoneground 7 Grain Party Crackers:  Potassium Bicarbonate and Tocopherols.

nnnn.   TLC Toasted Asiago Snack Crackers:  Monocalcium Phosphate, Sodium Phosphate, Potassium Bicarbonate, Sodium Acid Pyrophosphate and Tocopherols.

oooo.   TLC Trail Mix Chewy Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

pppp.   TLC Zesty Salsa Pita Crisps:  Hexane-Processed Soy Ingredients and Tocopherols.

qqqq.   Tomato Garlic Cheese Stone-Fired Thin Crust Pizza:  Xanthan Gum

rrrr.    Tuscan Veggie Bake Entrée:  Hexane-Processed Soy Ingredients.

64.     According to their labels, the Kashi Products below are labeled as "Nothing Artificial" yet contain between one (1) and three (3) of the recognized artificial ingredients identified herein, as follows:[54]

a.  Heart to Heart Honey Oat Waffles:  Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

b.  Heart to Heart Honey Toasted Oat Cereal:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

c.  Heart to Heart Instant Oatmeal Apple Cinnamon:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

d.  Heart to Heart Instant Oatmeal Golden Maple:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

e.  Heart to Heart Instant Oatmeal Raisin Spice:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

f.  Heart to Heart Oat Flakes & Blueberry Clusters Cereal:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

g.  Heart to Heart Roasted Garlic Whole Grain Crackers:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

h.  Heart to Heart Warm Cinnamon Oat Cereal:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

i.  Heart to Heart Original Whole Grain Crackers:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

---

[54] A chart listing each of the Kashi "Nothing Artificial" Products, and the identified artificial ingredients contained therein, is attached hereto as Exhibit 2.  A copy of the Kashi "Nothing Artificial" Products' labels and ingredients Plaintiffs have amassed thus far is attached hereto as Exhibit 39.

65.     The labeling of products as "All Natural" or "Nothing Artificial" carries implicit health benefits valued by consumers – benefits that consumers are often willing to pay a premium for – over comparable products that are not "All Natural" or with artificial ingredients. Over the past 30 years, Defendant has cultivated and reinforced a corporate image that has catered to this "All Natural" and "Nothing Artificial" theme and has boldly emblazoned one or more of these claims on the labels of each and every one of the food products identified above, despite the fact that these Kashi Products contain synthetic and/or artificial ingredients.

66.     Defendant used the "All Natural" and "Nothing Artificial" labels to shape and market the Kashi brand and sell the Kashi Products.  Yet, the existence of synthetic and artificial ingredients in the Kashi Products renders the use of the label "All Natural" false and misleading, as does the use of artificial ingredients in the Kashi Products labeled "Nothing Artificial."  In manufacturing the Kashi Products, Defendant had a choice between using natural or synthetic and artificial ingredients.  Defendant chose to use synthetic and artificial ingredients, but nonetheless labeled the Kashi Products as "All Natural" or "Nothing Artificial."  As a matter of its self-characterized socially conscious corporate morality, and as a matter of law, Defendant must now reconcile its labeling with the true content of Kashi's food products.

## DEFENDANT FRAUDULENTLY CONCEALED ITS WRONGS, TOLLING THE STATUTE OF LIMITATIONS

67.     Kashi Products labeled as "All Natural" contain synthetic and artificial ingredients as identified above.  Moreover, Kashi Products labeled as "Nothing Artificial" contain artificial ingredients as identified above.  Defendant did not disclose the identity of at least one of those artificial and/or synthetic ingredients, Hexane, on the Kashi Products' labels. Rather, the hexane used to process the soy ingredients in the Kashi Products is not listed as an ingredient or otherwise disclosed on the packages at all.  A reasonably prudent consumer buying

the Kashi Products would have no reason to suspect the Kashi Products labeled "All Natural" contained synthetic or artificial ingredients, including petroleum products such as hexane.  Nor would a reasonably prudent consumer buying the Kashi Products have any reason to suspect that the Kashi Products labeled "Nothing Artificial" contained artificial ingredients, including petroleum products such as hexane.

68.     Moreover, while Defendant's "All Natural" food products' labels did include the following in the ingredient list: Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Soy Ingredients (albeit without reference to the hexane), Potassium Bicarbonate, Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and Xanthan Gum, those labels did not disclose that any of these ingredients were synthetic or artificial, and therefore not natural.  Nor did Defendant otherwise disclose this information to Plaintiffs and members of the Classes.  Indeed, whether Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and Xanthan Gum are synthetic or natural, is not something Plaintiffs or any other average reasonable consumer buying Defendant's "All Natural" food products would know since that information is not common knowledge.  That combined with Defendant's active concealment in representing the Kashi Products as "All Natural," together with its numerous reinforcing statements described herein, and not disclosing otherwise gave the average reasonable consumer no reason to suspect that Defendant's representations on the packages that the Kashi Products are "All Natural" were not true, and therefore consumers had no reason to investigate whether these ingredients are synthetic and artificial or natural.

42

69.     Similarly, while Defendant's "Nothing Artificial" food products' labels did include the following in the ingredient list: Pyridoxine Hydrochloride, Alpha-tocopherol Acetate and Soy Ingredients, those labels did not disclose that any of these ingredients were artificial, or that the soy ingredients were processed with hexane, an artificial substance.  Nor did Defendant otherwise disclose this information to Plaintiffs and members of the Classes.  Indeed, whether Pyridoxine Hydrochloride, Alpha-tocopherol Acetate and Hexane-Processed Soy Ingredients are artificial is not something Plaintiffs or any other average reasonable consumer buying Defendant's "Nothing Artificial" Kashi Products would know since that information is not common knowledge.  That combined with Defendant's active concealment in representing the Kashi Products as "Nothing Artificial," together with its numerous reinforcing statements described herein, and not disclosing otherwise gave the average reasonable consumer no reason to suspect that Defendant's representations on the packages that the Kashi Products contain "Nothing Artificial" were not true, and therefore consumers had no reason to investigate whether these ingredients are artificial.

70.     As such, Defendant's concealment of the non-natural nature of the ingredients in the Kashi Products tolls the applicable statute of limitations.

71.     Although Kashi's wrongdoing was detailed in complaints filed in the California Action, these complaints were filed in California and may not have been reported by media services in New York and New Jersey.  As such, New York and New Jersey consumers would have had no reason to suspect Kashi's wrongdoing detailed herein prior to the California Action being reported in New York and New Jersey media.  Based on investigation of their counsel, Plaintiffs believe the earliest publication of the California Action in New York and New Jersey

media occurred on May 8, 2014.[55]  In no event could any New York or New Jersey consumer

been on notice of Kashi's wrongdoing prior to August 24, 2011, the date the first complaint in

the California Action was filed.  *See Bates, et al. v. Kashi Company, et al.*, (S.D.Cal.), Dkt. No.

01.

## CLASS ACTION ALLEGATIONS

72.  Plaintiffs bring this action on behalf of themselves and four classes seeking

certification under Fed.R.Civ.P 23 (b)(1), (b)(2), (b)(3) and (c)(4), as may deemed appropriate by

the Court.  Plaintiff Hun brings this action on behalf of himself and on behalf of all other

members of the "New York All Natural Class" and the "New York Nothing Artificial Class."

Plaintiff Paul brings this action on behalf of herself and on behalf of all other members of the

"New Jersey All Natural Class" and the "New Jersey Nothing Artificial Class" (collectively the

"Classes").  The four Classes are defined as follows:

> 1) "New York All Natural" Class: All persons who purchased Defendant's Kashi
> food products in New York that were labeled "All Natural" but which contained
> non-natural synthetic or artificial ingredients, as identified in this Complaint.

> 2) "New York Nothing Artificial" Class: All persons who purchased Defendant's
> Kashi food products in New York that were labeled "Nothing Artificial" but
> which contained artificial ingredients, as identified in this Complaint.

> 3) "New Jersey All Natural" Class: All persons who purchased Defendant's Kashi
> food products in New Jersey that were labeled "All Natural" but which contained
> non-natural synthetic or artificial ingredients, as identified in this Complaint.

> 4) "New Jersey Nothing Artificial" Class: All persons who purchased Defendant's
> Kashi food products in New Jersey that were labeled "Nothing Artificial" but
> which contained artificial ingredients, as identified in this Complaint.

Plaintiffs bring these Classes pursuant to Federal Rule of Civil Procedure 23(a), and

23(b)(1), 23(b)(2) and 23(b)(3).  Excluded from the Classes are: (i) Defendant Kashi Company

---

[55] Strom, Stephanie, *Kellogg Agrees to Alter Labeling on Kashi Line*, New York Times, May 8, 2014, *available at* http://www.nytimes.com/2014/05/09/business/kellogg-agrees-to-change-labeling-on-kashi-line.html?_r=0 (last visited March 12, 2015).

and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned and any members of their immediate families.

73.     Upon information and belief, there are tens of thousands of members of the New York All Natural and New York Nothing Artificial Classes in New York.   Similarly, upon information and belief, there are tens of thousands of members of the New Jersey All Natural and New Jersey Nothing Artificial Classes in New Jersey.   Therefore, individual joinder of all members of the Classes would be impracticable.

74.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

75.     The federal court presiding over the California Action already found Defendant's wrongdoing merits redress on a classwide basis.   On July 30, 2013, this court certified the California Action to proceed as a class of California purchasers of Defendant's "All Natural" products containing synthetic or artificial ingredients, and a class of California purchasers of Defendant's "Nothing Artificial" products containing artificial ingredients.[56]   After weighing evidence produced through over a year of discovery, the court performed a rigorous analysis of the requirements of Fed.R.Civ.P. 23(a) and (b)(3) and certified claims under California consumer protection law, common law unjust enrichment and for breach of express warranty under the California Uniform Commercial Code.[57]   The Court appointed Plaintiffs' counsel Feinstein Doyle Payne & Kravec, LLC and Faruqi & Faruqi, LLP as counsel for both classes.[58]

---

[56] Exhibit 3, *Astiana, et al. v. Kashi Company*, Order Granting in Part and Denying in Part Plaintiffs' Motion to Certify Class.
[57] *Id.*
[58] *Id.* at 26.

76.     Common questions of law or fact exist as to all members of the New York All Natural Class.  These questions predominate over the questions affecting only individual Class members.  These common legal or factual questions include:

    a.   Whether Defendant labeled certain Kashi Products as "All Natural;"

    b.   Whether products containing Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and/or Xanthan Gum are "All Natural;"

    c.   Whether Defendant's "All Natural" labeling of the Kashi Products is and was likely to deceive Class Members;

    d.   Whether Defendant's representations are unlawful; and

    e.   The appropriate measure of damages and/or restitution.

77.     Common questions of law or fact exist as to all members of the New York Nothing Artificial Class.   These questions predominate over the questions affecting only individual Class members.  These common legal or factual questions include:

    a.   Whether Defendant labeled certain Kashi Products as "Nothing Artificial;"

    b.   Whether Defendant's Kashi Products labeled "Nothing Artificial" contained one or more artificial substances;

    c.   Whether Defendant's "Nothing Artificial" labeling of the Kashi Products is likely to deceive Class Members;

    d.   Whether Defendant's representations are unlawful; and

    e.   The appropriate measure of damages and/or restitution.

46

78.     Common questions of law or fact exist as to all members of the New Jersey All Natural Class.  These questions predominate over the questions affecting only individual Class members.  These common legal or factual questions include:

a.   Whether Defendant labeled certain Kashi Products as "All Natural;"

b.   Whether products containing Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and/or Xanthan Gum are "All Natural;"

c.   Whether Defendant's "All Natural" labeling of the Kashi Products is and was likely to deceive Class Members;

d.   Whether Defendant's representations are unlawful; and

e.   The appropriate measure of damages and/or restitution.

79.     Common questions of law or fact exist as to all members of the New Jersey Nothing Artificial Class.   These questions predominate over the questions affecting only individual Class members.  These common legal or factual questions include:

a.   Whether Defendant labeled certain Kashi Products as "Nothing Artificial;"

b.   Whether Defendant's Kashi Products labeled "Nothing Artificial" contained one or more artificial substances;

c.   Whether Defendant's "Nothing Artificial" labeling of the Kashi Products is likely to deceive Class Members;

d.   Whether Defendant's representations are unlawful; and

e.   The appropriate measure of damages and/or restitution.

47

80.     The Classes are ascertainable because their definitions are objective and specific. Class Members may be identified through claim forms or receipts.  Additionally, Class Members may be identified through records of wholesale stores selling Defendant's Kashi Products in New York and New Jersey.  Wholesale stores or "clubs" such as B&J's Wholesale Club, Costco and Sam's Club require consumers to become members by providing their name, photograph and identifying information.   "Club" wholesalers issue membership cards bearing the member's photograph and require members to display the cards when making purchases.  As a result, "club" wholesalers retain records sufficient to show which Kashi Products Class Members purchased and when they purchased them.  Similarly, Class Members may be identified through the records of retailers who do not require "club" membership but encourage consumers to sign up for "reward" programs, pursuant to which consumers provide their name and personal information and are issued a "reward" card.  These retailers encourage consumers to display their "reward" card when making purchases by offering discounts and other incentives exclusively to consumers who show their "reward" card when making purchases.  As a result, retailers who use "reward" card programs retain records sufficient to show which Class Members' "reward" cards are associated with purchases of Defendant's Kashi Products.  Moreover, because the false and misleading "All Natural" and "Nothing Artificial" misrepresentations appear on the actual packages of the Kashi Products, there is no concern that the Classes include individuals who were not exposed to the misrepresentation.[59]

81.     Plaintiff Hun's claims are typical of the claims of the New York All Natural Class, in that he is a consumer who purchased Kashi's "All Natural" food products in New York that contained non-natural, synthetic and/or artificial ingredients during the relevant period.

---

[59] Exhibit 3 at 5.

Plaintiff Hun, therefore, is no different in any relevant respect from any other New York All Natural Class member, and the relief sought is common to the New York All Natural Class.[60]

82.     Plaintiff Hun's claims are also typical of the claims of the New York Nothing Artificial Class, in that he purchased Defendant's Kashi "Nothing Artificial" food products in New York that contained artificial ingredients during the relevant period.  Plaintiff Hun, therefore, is no different in any relevant respect from any other New York Nothing Artificial Class member, and the relief sought is common to the New York Nothing Artificial Class. [61]

83.     Plaintiff Paul's claims are typical of the claims of the New Jersey All Natural Class, in that she is a consumers who purchased Kashi's "All Natural" food products in New Jersey that contained non-natural, synthetic and/or artificial ingredients during the relevant period.  Plaintiff Paul, therefore, is no different in any relevant respect from any other New Jersey All Natural Class member, and the relief sought is common to the New Jersey All Natural Class.[62]

84.     Plaintiff Paul's claims are also typical of the claims of the New Jersey Nothing Artificial Class, in that she purchased Defendant's Kashi "Nothing Artificial" food products in New Jersey that contained artificial ingredients during the relevant period.  Plaintiff Paul,

---

[60] *Id*. at 10 (finding named plaintiffs' claims typical of the class where plaintiffs testified they would not have purchased the Kashi Products or would have paid less had they known the Kashi Products contained synthetic or artificial ingredients).

[61] *Id*. at 10 (finding named plaintiffs' claims typical of the class where plaintiffs testified they would not have purchased the Kashi Products or would have paid less had they known the Kashi Products contained synthetic or artificial ingredients).

[62] *Id*. at 10 (finding named plaintiffs' claims typical of the class where plaintiffs testified they would not have purchased the Kashi Products or would have paid less had they known the Kashi Products contained synthetic or artificial ingredients).

therefore, is no different in any relevant respect from any other New Jersey Nothing Artificial Class member, and the relief sought is common to the New Jersey Nothing Artificial Class. [63]

85.    Plaintiff Hun is an adequate representative of the New York All Natural Class because his interests do not conflict with the interests of the members of the New York All Natural Class he seeks to represent, and he has retained counsel competent and experienced in conducting complex class action litigation.  Plaintiff Hun and his counsel will adequately protect the interests of the New York All Natural Class.[64]

86.    Plaintiff Hun is an adequate representative of the New York Nothing Artificial Class because his interests do not conflict with the interests of the members of the New York Nothing Artificial Class he seeks to represent, and he has retained counsel competent and experienced in conducting complex class action litigation.  Plaintiff Hun and his counsel will adequately protect the interests of the New York Nothing Artificial Class.[65]

87.    Plaintiff Paul is an adequate representative of the New Jersey All Natural Class because her interests do not conflict with the interests of the members of the New Jersey All Natural Class she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation.  Plaintiff Paul and her counsel will adequately protect the interests of the New Jersey All Natural Class.[66]

88.    Plaintiff Paul is an adequate representative of the New Jersey Nothing Artificial Class because her interests do not conflict with the interests of the members of the New Jersey Nothing Artificial Class she seeks to represent, and she has retained counsel competent and

---

[63] *Id*. at 10 (finding named plaintiffs' claims typical of the class where plaintiffs testified they would not have purchased the Kashi Products or would have paid less had they known the Kashi Products contained synthetic or artificial ingredients).
[64] *Id*. at 11-12 (finding named plaintiff and counsel adequately represented class).
[65] *Id.* at 11-12 (finding named plaintiff and counsel adequately represented class).
[66] *Id*. at 11-12 (finding named plaintiff and counsel adequately represented class).

experienced in conducting complex class action litigation.  Plaintiff Paul and her counsel will adequately protect the interests of the New Jersey Nothing Artificial Class.[67]

89.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual member of the Classes will likely be relatively small, especially given the relatively small cost of the Kashi Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct.  Thus, it would be virtually impossible for members of the Classes to effectively redress the wrongs done to them through individual actions.  Moreover, even if members of the Classes could afford individual actions, it would still not be preferable to class-wide litigation.    Individual actions also present the potential for inconsistent or contradictory judgments, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the class.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.[68]

90.     In the alternative, the Classes may be certified because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate preliminary and final equitable relief with respect to the Classes.

91.     Further, in the alternative, the Classes may be maintained as class actions with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

---

[67] *Id.* at 11-12 (finding named plaintiff and counsel adequately represented class).
[68] *Id*. at 18-19 (finding class action superior because it would not be economically feasible for every consumer who purchased the Kashi Products to obtain relief on an individual basis).

## NEW YORK LAW COUNTS

## COUNT I

### (Deceptive Acts or Practices, New York Gen. Bus. Law. § 349)

92.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

93.     Plaintiff Hun brings this Count I individually, on behalf of the members of the New York All Natural Class and on behalf of the members of the New York Nothing Artificial Class.

94.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting the Kashi Products as "All Natural" when they contained synthetic and artificial ingredients and as containing "Nothing Artificial" when they contained artificial ingredients.

95.     The foregoing deceptive acts and practices were directed at consumers.

96.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and ingredients of the Kashi Products to induce consumers to purchase the Kashi Products.

97.     Plaintiff Hun and members of the New York All Natural Class were injured because they paid for the Kashi Products labeled "All Natural," which they would not have done had they known the truth that the supposedly "All Natural" Kashi Products contained synthetic and artificial ingredients.

98.     Plaintiff Hun and members of the New York Nothing Artificial Class were injured because they paid for the Kashi Products labeled "Nothing Artificial," which they would not

have done had they known the truth that the supposedly "Nothing Artificial" Kashi Products contained artificial ingredients.

99.     Plaintiff Hun, on behalf of himself, other members of the New York All Natural Class and other members of the New York Nothing Artificial Class, seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or $50.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT II

### (False Advertising, New York Gen. Bus. Law. § 350)

100.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

101.     Plaintiff Hun brings this Count II individually, on behalf of the members of the New York All Natural Class and on behalf of the members of the New York Nothing Artificial Class.

102.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

103.     Defendant's Kashi Products' labels' claims the Kashi Products were "All Natural" or contained "Nothing Artificial" were false, misleading and deceptive statements and representations of fact that were directed to consumers.

104.     The Kashi Products' labels' false, misleading and deceptive "All Natural" and "Nothing Artificial" statements and representations of fact have resulted in consumer injury and harm to the public interest.

105.     As a result of the Kashi Products' labels' false, misleading and deceptive "All Natural" and "Nothing Artificial" statements and representations of fact, Plaintiff Hun has suffered and continue to suffer economic injury.

106.     Plaintiff Hun, the New York All Natural Class and the New York Nothing Artificial Class suffered an ascertainable loss caused by Defendant's Kashi Products' labels' "All Natural" and "Nothing Artificial" misrepresentations because they paid for the Kashi Products, which they would not have done had they known the truth about the product.

107.     Plaintiff Hun, on behalf of himself and other members of the New York All Natural Class and the New York Nothing Artificial Class, seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or $500.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

<u>**COUNT III**</u>

**(Breach of Express Warranty, N.Y. U.C.C. § 2-313)**

108.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

109.     Plaintiff Hun brings this Count III individually, on behalf of the members of the New York All Natural Class and on behalf of the members of the New York Nothing Artificial Class.

110.     Kashi is and at all relevant times was a merchant under N.Y. U.C.C. § 2-313.

111.     By labeling the Kashi Products "All Natural," Kashi, as the designer, manufacturer, marketer, distributor, and/or seller of the Kashi Products expressly warranted that these Kashi Products were "All Natural."

112.    By labeling the Kashi Products "Nothing Artificial," Kashi, as the designer, manufacturer, marketer, distributor and/or seller of the Kashi Products expressly warranted that these Kashi products contained "Nothing Artificial."

113.    In fact, the supposedly "All Natural" Kashi Products contained synthetic and artificial ingredients, and the supposedly "Nothing Artificial" Kashi products contained artificial ingredients.

114.    Kashi breached its "All Natural" warranty by including synthetic and artificial ingredients in the "All Natural" Kashi Products.

115.    Kashi breached its "Nothing Artificial" warranty by including artificial ingredients in the "Nothing Artificial" Kashi Products.

116.    Plaintiff Hun and members of the New York All Natural Class and New York Nothing Artificial Class were injured as a direct and proximate result of Kashi's breach of these warranties because they would not have purchased the Kashi Products had they known the truth that these warranties were false.

## COUNT IV

### (Unjust Enrichment)

117.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

118.    Plaintiff Hun brings this Count IV individually, on behalf of the members of the New York All Natural Class and on behalf of the members of the New York Nothing Artificial Class.

119.    By selling the Kashi Products falsely and misleadingly labeled "All Natural" but containing synthetic and artificial ingredients as described throughout this Complaint, Kashi

obtained money from Plaintiff Hun and members of the New York All Natural Class.  Kashi obtained money from Plaintiff Hun and members of the New York All Natural Class for Kashi Products promised to be "All Natural" even though the Kashi Products contained artificial and/or synthetic ingredients as described throughout this Complaint.

120.    By selling the Kashi Products falsely and misleadingly labeled "Nothing Artificial" but containing artificial ingredients as described throughout this Complaint, Kashi obtained money from Plaintiff Hun and members of the New York Nothing Artificial Class. Kashi obtained money from Plaintiff Hun and members of the New York Nothing Artificial Class for Kashi Products promised to be "Nothing Artificial" even though the Kashi Products contain artificial ingredients as described throughout this Complaint.

121.    By virtue of the unlawful conduct described herein, Kashi will be unjustly enriched if it is permitted to retain the money it obtained from Plaintiff and Paul and members of the New York All Natural Class for Kashi Products falsely and misleadingly labeled "All Natural" but containing synthetic and/or artificial ingredients.

122.    By virtue of the unlawful conduct described herein, Kashi will be unjustly enriched if it is permitted to retain the money it obtained from Plaintiff Paul and members of the New York Nothing Artificial Class for Kashi Products falsely and misleadingly labeled "Nothing Artificial" containing artificial ingredients.

123.    In equity and good conscience, Kashi should be required to return to Plaintiff Hun and the New York All Natural Class the amount they paid to purchase the "All Natural" Kashi Products, and to return to Plaintiff Hun and the New York Nothing Artificial Class the amount they paid to purchase the "Nothing Artificial" Kashi Products.  Otherwise, Kashi will be unjustly

enriched and Plaintiffs Hun and members of the New York All Natural Class and New York Nothing Artificial Class will be left without adequate remedy at law.

## NEW JERSEY LAW COUNTS

## COUNT V

**(violation of the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14 *et seq.* ("TCCWNA"))**

124.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.

125.    Plaintiff Paul brings this Count IV on behalf of herself, the New Jersey All Natural Class and the New Jersey Nothing Artificial Class.

126.    Plaintiff Paul and members of the New Jersey All Natural Class and New Jersey Nothing Artificial Class are "consumers" within the meaning of the TCCWNA, N.J.S.A. 56:12-15 because they purchased the Kashi Products primarily for personal, family or household purposes.

127.    Kashi manufactured, marketed, advertised and distributed the Kashi Products in its course of business and is a "seller" within the meaning of the TCCWNA.

128.    Kashi designed, placed and displayed the "All Natural" and "Nothing Artificial" language on the Kashi Products' labels.   Kashi put forth the "All Natural" and "Nothing Artificial" language for viewing by consumers.

129.    The "All Natural" language Kashi displayed on the Kashi Products' labels is a consumer contract, warranty, notice and/or sign subject to the TCCWNA.

130.    The "Nothing Artificial" language Kashi displayed on the Kashi Products' labels is a consumer contract, warranty, notice and/or sign subject to the TCCWNA.

131.    A consumer contract, warranty, notice and/or sign violates the TCCWNA if it violates clearly established New Jersey or federal law.

132.    The rights of consumers to truthful and accurate statements on the labels and marketing materials for the Kashi Products, as well as the right to avoid deception caused by false and misleading statements on such labels and marketing materials, are "clearly established legal rights" under N.J.S.A. § 56:8-2.

133.    The responsibility of a seller to refrain from the employment of any unconscionable commercial practice, deception, fraud, false pretense, or misrepresentation, and to refrain from the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of merchandise, and to refrain from selling products with labels that make false statements about the products, are clearly established under N.J.S.A. § 56:8-2.

134.    The Kashi Products "All Natural" labels violate and continue to violate clearly established New Jersey law because selling the Kashi Products labeled "All Natural" containing synthetic and artificial ingredients constitutes an unconscionable commercial practice, deception, fraud, false pretense, false promise and misrepresentation in violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-2.  Furthermore, by selling the Kashi Products containing synthetic and artificial ingredients and labeled "All Natural" with the intent consumers rely on such labeling, Defendant knowingly concealed, suppressed and omitted material facts in violation of the CFA.

135.    The Kashi Products' "All Natural" labeling violates and continues to violate clearly established New Jersey and federal law because labeling the Kashi Products "All Natural" when they contain synthetic and artificial ingredients violates 21 U.S.C. § 343(a)(1),

which provides "Any food is misbranded if its labeling is false or misleading in any particular." *See also* N.J.S.A. § 24:5-17 (same).

136.   Kashi violated and continues to violate the TCCWNA by selling the Kashi Products labeled "All Natural" but containing synthetic and/or artificial ingredients because the "All Natural" provision on products containing artificial ingredients is prohibited by clearly established New Jersey and federal law.

137.   The Kashi Products' "Nothing Artificial" labeling violates and continues to violate clearly established New Jersey law because selling Kashi Products labeled "Nothing Artificial" when they contain artificial ingredients constitutes an unconscionable commercial practice, deception, fraud, false pretense, false promise and misrepresentation in violation of the CFA.   Furthermore, by selling the Kashi Products containing artificial ingredients and labeled "Nothing Artificial" with the intent consumers rely on such labeling, Defendant knowingly concealed, suppressed and omitted material facts in violation of the CFA.

138.   The Kashi Products' "Nothing Artificial" labels violate and continue to violate clearly established New Jersey and federal law because labeling the Kashi Products "Nothing Artificial" when they contain artificial ingredients violates 21 U.S.C. § 343(a)(1), which provides "Any food is misbranded if its labeling is false or misleading in any particular."   *See also* N.J.S.A. § 24:5-17 (same).

139.   Kashi violated and continues to violate the TCCWNA by selling the Kashi Products labeled "Nothing Artificial" but containing artificial ingredients because the "Nothing Artificial" provision on products containing artificial ingredients is prohibited by clearly established New Jersey and federal law.

140.    By virtue of Kashi's violations of the TCCWNA, Plaintiff Paul and members of the New Jersey All Natural Class and the New Jersey Nothing Artificial Class are each entitled to recover $100.00 in statutory damages, actual damages, reasonable attorney's fees and court costs pursuant to N.J.S.A. 56:12-17.

## COUNT VI

### (Unjust Enrichment)

141.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.

142.    Plaintiff Paul brings this Count VI on behalf of herself, the New Jersey All Natural Class and the New Jersey Nothing Artificial Class.

143.    By selling the Kashi Products falsely and misleadingly labeled "All Natural" but containing synthetic and artificial ingredients as described throughout this Complaint, Kashi obtained money from Plaintiff Paul and members of the New Jersey All Natural Class.  Kashi obtained money from Plaintiff Paul and members of the New Jersey All Natural Class for Kashi Products promised to be "All Natural" even though the Kashi Products contained artificial and/or synthetic ingredients as described throughout this Complaint.

144.    By selling the Kashi Products falsely and misleadingly labeled "Nothing Artificial" but containing artificial ingredients as described throughout this Complaint, Kashi obtained money from Plaintiff Paul and members of the New Jersey Nothing Artificial Class. Kashi obtained money from Plaintiff Paul and members of the New Jersey Nothing Artificial Class for Kashi Products promised to be "Nothing Artificial" even though the Kashi Products contain artificial ingredients as described throughout this Complaint.

145.    By virtue of the unlawful conduct described herein, Kashi will be unjustly enriched if it is permitted to retain the money it obtained from Plaintiff Paul and members of the New Jersey All Natural Class for Kashi Products falsely and misleadingly labeled "All Natural" but containing synthetic and/or artificial ingredients.

146.    By virtue of the unlawful conduct described herein, Kashi will be unjustly enriched if it is permitted to retain the money it obtained from Plaintiff Paul and members of the New Jersey Nothing Artificial Class for Kashi Products falsely and misleadingly labeled "Nothing Artificial" containing artificial ingredients.

147.    In equity and good conscience, Kashi should be required to return to Plaintiff Paul and the New Jersey All Natural Class the amount they paid to purchase the "All Natural" Kashi Products, and to return to Plaintiff Paul and the New Jersey Nothing Artificial Class the amount they paid to purchase the "Nothing Artificial" Kashi Products.  Otherwise, Kashi will be unjustly enriched and Plaintiff Paul and members of the New Jersey All Natural Class and New Jersey Nothing Artificial Class will be left without adequate remedy at law.

## COUNT VII

### (Breach of Express Warranty, N.J.S.A. 12A:2-313)

148.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.

149.    Plaintiff Paul brings this Count VII on behalf of herself, the New Jersey All Natural Class and the New Jersey Nothing Artificial Class.

150.    Kashi made express warranties to Plaintiff Paul and members of the New Jersey All Natural Class that the Kashi Products they purchased were "All Natural."

151.    Kashi made express warranties to Plaintiff Paul and members of the New Jersey Nothing Artificial Class that the Kashi Products they purchased contained "Nothing Artificial."

152.    The "All Natural" express warranty made to Plaintiff Paul and the New Jersey All Natural Class appears on every package of the Kashi Products labeled "All Natural" and was also reinforced by appearing in numerous other forms of advertising Kashi commissioned. These promises regarding the nature of the Kashi Products specifically relate to the goods being purchased and became part of the basis of the bargain.

153.    The "Nothing Artificial" express warranty made to Plaintiff Paul and the New Jersey Nothing Artificial Class appears on every package of the Kashi Products labeled "Nothing Artificial" and was also reinforced by appearing in numerous other forms of advertising Kashi commissioned.  These promises regarding the nature of the Kashi Products specifically relate to the goods being purchased and became part of the basis of the bargain.

154.    Plaintiff Paul, the New Jersey All Natural Class and New Jersey Nothing Artificial Class purchased the Kashi Products in the belief that they conformed to the express warranties that were made on the Kashi Products' packaging.

155.    Kashi breached the express warranties made to Plaintiff Paul, the New Jersey All Natural Class and the New Jersey Nothing Artificial Class by failing to supply goods that conformed to the warranties it made.

156.    As a result of Kashi's breach of its warranties as described throughout this Complaint, Plaintiff Paul and the New Jersey All Natural Class and New Jersey Nothing Artificial Class lost money.  Plaintiff Paul and the New Jersey All Natural Class and New Jersey Nothing Artificial Class paid money for the Kashi Products.  However, Plaintiff Paul and the New Jersey All Natural Class and New Jersey Nothing Artificial Class did not obtain the full

value of the Kashi Products as warranted.  Had Plaintiff Paul and the New Jersey All Natural Class and New Jersey Nothing Artificial Class known the Kashi Products were not "All Natural" or "Nothing Artificial" as warranted, they would not have purchased the Kashi Products and would instead have purchased truly "All Natural" or "Nothing Artificial" products or less expensive equivalent products that were not warranted to be "All Natural" or "Nothing Artificial."  Accordingly, Plaintiff Paul and the New Jersey All Natural Class and New Jersey Nothing Artificial Class have suffered injury in fact and lost money or property as a result of Kashi's breach of its warranties described throughout this Complaint.

157.    Accordingly, Plaintiff Paul and the New Jersey All Natural Class and New Jersey Nothing Artificial Class are entitled to recover damages from Kashi.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the members of the Classes request an award and relief as follows:

A.      An order certifying that this action is properly brought and may be maintained as a class action; that Plaintiff Hun be appointed representative of the New York All Natural Class and New York Nothing Artificial Class; that Plaintiff Paul be appointed representative of the New Jersey All Natural Class and New Jersey Nothing Artificial Class; and that Feinstein Doyle Payne & Kravec, LLC and Faruqi & Faruqi, LLP be appointed Co-Lead Counsel for the Classes.

B.      Restitution in such amount that Plaintiffs and members of the New York All Natural Class and New Jersey All Natural Class paid to purchase Kashi's "All Natural" Kashi Products or paid as a premium over non-natural alternatives for Causes of Action for which it is available.

C.      Restitution in such amount that Plaintiffs and members of the New York Nothing Artificial Class and New Jersey Nothing Artificial Class paid to purchase Kashi's "Nothing Artificial" Kashi Products or paid as a premium over non-natural alternatives for Causes of Action for which it is available.

D.       Compensatory damages for Causes of Action for which they are available.

E.      Statutory damages allowable under N.J.S.A. 56:12-17 and New York Gen. Bus. Law §§ 349 and 350-e.

F.      Punitive damages for Causes of Action for which they are available.

G.      A declaration its "All Natural" and "Nothing Artificial" labeling of the Kashi Products is unlawful, and an Order enjoining Kashi from labeling the Kashi Products unlawfully or misleadingly, in violation of New York, New Jersey and federal law.

H.      An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest.

I.      An Order requiring an accounting for, and imposition of, a constructive trust upon all monies Kashi received as a result of the misleading, fraudulent and unlawful conduct alleged herein.

J.      Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of action and/or issues so triable.

DATED:  March 17, 2015                      **FARUQI & FARUQI, LLP**


By:  */s/Antonio Vozzolo*

Nadeem Faruqi (No. NF-1184)
Antonio Vozzolo (No. AV-8773)
369 Lexington Avenue, 10th Floor
New York, NY 10017

Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331
Email:  nfaruqi@faruqilaw.com
Email:  avozzolo@faruqilaw.com

Joseph N. Kravec, Jr. (to be admitted *pro hac vice*)
Wyatt A. Lison (to be admitted *pro hac vice*)
**FEINSTEIN DOYLE PAYNE**
   **& KRAVEC, LLC**
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA 15219
Phone: (412) 281-8400
Fax: (412) 281-1007
Email: jkravec@fdpklaw.com
wlison@fdpklaw.com